UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )
                                   )
    VS.                            ) No. 1:17-CR-00041(RLW)
                                   )
LAWRENCE J. STRICKLAND,            )
                                   )
                Defendant.         )
_____)


SENTENCING HEARING
BEFORE THE HONORABLE RONNIE L. WHITE
FEBRUARY 20, 2018
CAPE GIRARDEAU, MISSOURI


FOR THE PLAINTIFF:

    PAUL W. HAHN
    OFFICE OF U.S. ATTORNEY
    555 Independence, Suite 3000
    Cape Girardeau, MO  63703
    (573) 334-3736


FOR THE DEFENDANT:

    MICHAEL SKRIEN
    OFFICE OF FEDERAL PUBLIC DEFENDER
    325 Broadway, 2nd Floor
    Cape Girardeau, MO  63701
    (573) 339-0242


    Proceedings recorded by mechanical stenography;
transcript produced by computer.
_____

DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
Federal Official Court Reporter
111 South Tenth Street, Third Floor
St. Louis, MO  63102
(314) 244-7449

1      (PROCEEDINGS BEGAN AT 10:40 AM.)

2      THE COURT:  Counsel, are we ready to proceed?

3      MR. HAHN:  Yes, Your Honor.

4      MR. SKRIEN:  Yes, Your Honor.

5      THE COURT:  We're here in the matter of the

6  *United States versus Lawrence J. Strickland*.  The Cause Number

7  is 1:17-CR-00041-1(RLW).  The Government is represented by

8  Assistant United States Attorney Paul Hahn.  Defense counsel

9  is Michael Skrien, and Mr. Strickland is here in person.

10      Mr. Strickland, on August 21st, 2017, you pled guilty

11 to the charge of "Felon in Possession of a Firearm - Armed

12 Career Criminal."  Do you remember that?

13      THE DEFENDANT:  Yes, sir, but I told my attorney to

14 pull the plea.

15      THE COURT:  Well, let me have a discussion with you

16 about that.  Mr. Skrien has filed a Motion for Leave to

17 Withdraw the Plea and a Motion to Withdraw as Counsel and have

18 substitute counsel appointed.  I will take up the Motion to

19 Withdraw the Plea first.

20      THE DEFENDANT:  Yes, sir.

21      THE COURT:  Mr. Strickland, it's my understanding

22 that your dissatisfaction comes from the amount of time that

23 the plea -- that the *Sentencing Guidelines* are recommending.

24      THE DEFENDANT:  Yes, sir.

25      THE COURT:  But let me read this to you because this

1  is what you signed on August 21st.

2      Under "Statutory Penalties," it says, "The Defendant

3  fully understands that the maximum possible penalty provided

4  by law for the crime to which the Defendant is pleading guilty

5  is imprisonment of not more than ten years, a fine of not more

6  than $250,000 or both such imprisonment and fine.  The Court

7  shall also impose a period of supervised release of not more

8  than three years.  In certain situations, under Title 18,

9  United States Code, Section 924(e), Armed Career Criminal, the

10  Defendant may be subject to a mandatory minimum sentence of 15

11  years and a maximum sentence greater than that above.  The

12  Defendant is pleading guilty with full knowledge of these

13  possibilities, has discussed these possibilities with counsel,

14  and will not" -- I repeat -- "will not be able to withdraw the

15  guilty plea if the Court determines the foregoing statute

16  applies to Defendant's sentence.  However, both parties retain

17  the right to litigate whether Section 924(e) applies to the

18  Defendant."

19      Your lawyer can litigate that issue to me this

20  morning.

21      Next section, sentence -- Section 6 -- no -- it's

22  6(c).  It says "Total Offense Level."  "The parties do not

23  have an estimate of the Total Offense Level."

24      So at the time of the plea we didn't have it.

25      "Depending on the underlying offense and Defendant's

1  criminal history, Defendant could be an Armed Career Criminal

2  pursuant to Title 18, United States Code, Section 924(e) and

3  Section 4B1.4.  If the Court finds the Defendant is an Armed

4  Career Criminal, the Total Offense Level may be higher and the

5  Criminal History Category may be as high as a VI.  Defendant

6  has discussed these possibilities with counsel.  Both parties

7  reserve the right to argue that the Defendant is or is not an

8  Armed Career Criminal."

9       Section 12 of your Plea Agreement says, "No right to

10  withdraw guilty plea."

11       "Pursuant to Rule 11(c) and (d), *Federal Rules of*

12  *Criminal Procedure*, the Defendant understands that there will

13  be no right to withdraw the guilty plea under this Agreement

14  except where the Court rejects those portions of the Plea

15  Agreement with -- dealing with charges the Defendant -- the

16  Government agrees to dismiss or not bring."

17       So you signed it saying that with -- that --

18  understanding that you had no right to withdraw your guilty

19  plea.  Now do you want to respond to that or you want me to

20  rule?

21       THE DEFENDANT:  I -- I -- I actually signed it

22  because my attorney told me to sign it.

23       I don't know what's going on, Your Honor.  I put it

24  in the faith of God and my attorney.  And for one, I don't see

25  how we got here.  I honestly do not.  I was promised zero to

1  ten years and that I was guaranteed I wouldn't get the ten.

2  And so that's why I waived all my rights.  And ---

3          THE COURT:  But all of that was discussed with you

4  when I asked you the questions, not when your attorney asked

5  you the questions.  I asked you did you want to plead guilty;

6  did you understand that these possibilities existed, and you

7  said "yes."  And right now, because the Total Offense Level

8  and the Criminal History Category came back different than

9  what you believed, you're upset about it.  But your lawyer can

10  argue to me this morning that these things don't apply to you

11  and ask for a different sentence.

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  So I'm going to overrule your Motion to

14  Withdraw the Plea.

15          Now, Mr. Hahn, do you have anything to say or

16  Mr. Skrien?

17          MR. SKRIEN:  No, Your Honor.

18          MR. HAHN:  No, Your Honor.  I had told Mr. Skrien

19  earlier that based on their correspondence, the Government

20  would not oppose that motion, but I'm very mindful of what the

21  Court has recited and the terms of the Plea Agreement where --

22  where Mr. Strickland was put on notice that this possibility

23  could exist.

24          THE COURT:  So, Mr. Strickland, your motion to

25  withdraw your guilty plea is denied.  I'm going to deny

1   Mr. Skrien's Motion to Withdraw as I believe Mr. Skrien is

2   very capable this morning of arguing to the Court any

3   information he has in mitigation of the sentence that's

4   recommended.  So those -- both of those motions are denied.

5         Mr. Strickland, have you and Mr. Skrien had an

6   opportunity to read and discuss the Presentence Report?

7         THE DEFENDANT:  No, sir, not -- not that I know of.

8         THE COURT:  Mr. Skrien, did you show him the

9   Presentence Report?

10        MR. SKRIEN:  We did, Your Honor.  In fact, that's

11   what he's upset about.

12        THE COURT:  Exactly.  I mean no other way you could

13   have known that without seeing the Presentence Report.

14        Are there any objections -- Mr. Hahn, have you read

15   the Presentence Report?

16        MR. HAHN:  I have, Your Honor.

17        THE COURT:  Are there any objections to the factual

18   accuracy of the report?

19        MR. HAHN:  No, Your Honor.

20        THE COURT:  Mr. Skrien?

21        MR. SKRIEN:  No, Your Honor.

22        THE COURT:  Are there any objections to the Probation

23   Officer's application of the *Sentencing Guidelines*?  Mr. Hahn?

24        MR. HAHN:  No, Your Honor.

25        THE COURT:  Mr. Skrien?

1      MR. SKRIEN:  Your Honor, I will object at this point

2  for a couple of reasons.  And I know the Court sent out an

3  Order for us to be prepared for sentencing.  I had not filed a

4  formal objection, but I'd like to state those now on the

5  record with the Court's ---

6      THE COURT:  Sure.

7      MR. SKRIEN:  Thank you.

8      We would object to the "Armed Career Criminal"

9  status, Your Honor, for two reasons.  What makes him an Armed

10  Career Criminal is Paragraph 36 which has one case, one case

11  number but two Counts.  Those two Counts are each counted

12  separately under the Statute 924(e), and I don't dispute the

13  language of Section 924(e), but I don't believe it produces a

14  just result.

15      If Mr. Strickland were being sentenced under the

16  Career Offender guidelines, these two would only count as one

17  because there was no intervening arrest.  It's my

18  understanding there was no intervening arrest.  Yet, under the

19  Armed Career Criminal statute, he is.  They count as two

20  separate ones.

21      That -- If you asked, I believe, 20 people on the

22  street, they would all agree that doesn't make sense.  In one

23  circumstance they're counted as separate and in one

24  circumstance they're counted as one.  And so but for those two

25  being counted as two separates, he would not be considered an

1  Armed Career Criminal.  So I would object for that reason that

2  those ought to be considered one and not two.

3          THE COURT:  That's Paragraph 36?

4          MR. SKRIEN:  Correct.

5          THE COURT:  Okay.

6          MR. SKRIEN:  The second reason I'd like to object is

7  simply because ---

8          THE COURT:  Wait a minute.  Let me have Mr. Hahn

9  respond to that.

10          MR. SKRIEN:  I'm sorry.  Go ahead.

11          MR. HAHN:  Your Honor, the enhancement statute based

12  on the Armed Career Criminal, 18 USC 924(e), simply requires

13  that the acts be committed on occasions different than

14  another.  And ---

15          THE COURT:  I got 2-28-2002, 9-5-2007.

16          MR. HAHN:  Yeah.  There is -- On the entry on

17  Paragraph 36 where two of the three predicates are referenced,

18  one of the sales, drug sales, occurred on October 19th, 1999,

19  and the other transaction that's charged and for which

20  Mr. Strickland was convicted occurred on October 14th, 1999.

21  And so those two of the three predicates occurred in the same

22  case but at different times.  And under the law and the case

23  law, the statute and the case law, that puts Mr. Strickland

24  squarely with the other conviction referenced in the

25  Presentence Report to which I'm not aware of any -- any

1　objection to that that's entered in -- referenced in Paragraph

2　35 about March 25th, 2002, that -- the unlawful use of a

3　weapon charge where Mr. Strickland shot at a person in a motor

4　vehicle as -- as charged.  That's the third predicate

5　conviction.

6　　　　　THE COURT:  The Court will overrule Defendant's

7　objection to Paragraph 36.

8　　　　　Make your next objection.

9　　　　　MR. SKRIEN:  Thank you, Your Honor.

10　　　　　I would just briefly add that our argument is that

11　that is a continuing course of conduct, those two offenses on

12　the two days.

13　　　　　THE COURT:  Mr. Hahn?

14　　　　　MR. HAHN:  Your Honor, I understand Mr. Skrien's

15　argument, but they occurred on -- on different days, five days

16　apart.  And I just for the record want to -- want to make

17　clear that -- that Mr. Skrien is not objecting to the nature

18　of the convictions or the dates for which those convictions

19　occurred.  I mean, otherwise, I can put into evidence all --

20　all -- all three of the convictions in terms of it, but I -- I

21　don't see a need to do that if we're in agreement that what's

22　stated in the Presentence Report is accurate.

23　　　　　THE COURT:  Defendant's objection is overruled.

24　　　　　Subject to the objections that have been made and

25　ruled by the Court, the Court adopts the statements -- factual

1  statements contained in the Presentence Report.

2       Oh, did you have another one?

3       MR. SKRIEN:  I did, Your Honor.  I'm sorry.

4       THE COURT:  Oh, I thought that was it.  Go ahead.

5       MR. SKRIEN:  The second reason I'd like to object is

6  because of what I believe is ongoing litigation with our

7  office that challenges the drug -- Missouri drug statutes.

8  Beyond that, I don't know a lot other than I believe the

9  statute worded includes some attempts, conduct that would

10 disqualify it, that is not considered the serious drug

11 offense, the type Congress intended.  It's my understanding

12 that has been argued to the Eighth Circuit, and we're waiting

13 for a ruling on that.  So I would also object on those

14 grounds.

15      THE COURT:  Mr. Hahn?

16      MR. HAHN:  Your Honor, my impression from Paragraph

17 36 and reviewing the underlying documents is that attempt is

18 not part of what's charged, at least in the drug offenses;

19 that there are straight sales of controlled substances for the

20 case referenced in Paragraph 36.  So -- And Mr. Skrien can

21 educate me here.  I don't think it's -- either -- any of these

22 offenses are based on attempts.

23      Is that correct?

24      MR. SKRIEN:  Your Honor, that's not my argument.

25      THE COURT:  His argument is they are, but I'll

1  resolve it.  They're not based on attempts, and I will

2  overrule your objection.

3          Did you have anything further, Mr. Skrien?

4          MR. SKRIEN:  No, Your Honor.  Thank you.

5          THE COURT:  Subject to the objections previously made

6  and ruled, the Court adopts the factual findings contained in

7  the Presentence Report as its findings of fact.

8          The Court determines that the applicable guidelines

9  are a Total Offense Level of 30, Criminal History Category of

10  IV.  The guidelines provision calls for 180 months in prison.

11          Under Local Rule 13.05, it is the procedure of this

12  Court to hold a bench conference in every plea and every

13  sentencing hearing.  We will now conduct the bench conference,

14  and this portion of the transcript of this hearing will be

15  filed under seal.  Counsel, please approach sidebar.

16          (Pursuant to Local Rule 13.05, a bench conference was

17  held on the record under seal; after which the following

18  proceedings continued in open court:)

19          THE COURT:  Do either party know of any reason why

20  this Court should not now proceed with the imposition of

21  sentence?

22          MR. HAHN:  No, Your Honor.

23          MR. SKRIEN:  No, Your Honor.

24          THE COURT:  Mr. Skrien, do you wish to make a

25  statement or present any information in mitigation of the

1  sentence?

2      MR. SKRIEN:  Your Honor, I'll only say this:  That

3  having our objections overruled and given the Court's ruling

4  on the range of punishment, I think a statutory mandatory

5  minimum of 180 months is more than sufficient to achieve all

6  the goals of sentencing, and we would ask for that as your

7  sentence.

8      THE COURT:  Mr. Strickland, do you wish to address

9  the Court?

10      THE DEFENDANT:  Yes, sir.  I would like to address

11  the Court on the -- on the drug charges, sir.

12      The drug charges came about in '99 which I had left

13  Sikeston and moved to Hannibal, Missouri and caught a gun

14  charge, but my guns were registered to me.  Me and my wife and

15  children were out looking for my little brother that got

16  killed last year.  And so we -- They were having like a race

17  rally -- racial rally, and they saw me and my wife and

18  children or me and my wife being white and me black.  And --

19  And so we were at these lights at 11:00 at night, and they

20  started throwing things.  And the lights were blinking.

21  People were still going on that lot.  And -- And so I grabbed

22  one of my firearms, and I fired it into the air.  I did not

23  shoot into the crowd.  It was over 150 some people there or

24  better.  So the prosecutor didn't want to give me unlawful use

25  of a weapon, shooting a gun in the city limits.  So he went to

1  law school with Ms. Christy Baker-Neill, and he said, well, he

2  had a school buddy that -- not a school buddy but a law school

3  buddy.  He went to law school; let them see what he could go

4  down and dig up on me.  So he went down to Sikeston and came

5  back and dug up -- The day after he got back, I had -- I had

6  drug charges that popped up.  I took it to trial.  When I took

7  it to trial, it was a -- it was a clansman that's foreman of

8  my jury, aired on Jerry Springer in '97 and '98, Jerod Cook.

9  And so -- But it took me five years to -- to find this out.  I

10  was -- I happened to get locked up in Pacific with -- with one

11  of the guys that ran with him, and he said they left him alone

12  because he was drawing a lot of heat to him.

13       So that's -- I mean I've been wronged.  And like I

14  was -- This case about the shotgun, I was sitting in my yard,

15  me and a friend, and the police jumped out on me; jumped out

16  on me; pulled a gun; told me to get out of my vehicle.  I get

17  out of my vehicle.  He said he got a call we was selling drugs

18  out of my vehicle in my yard.  At first I thought I had

19  privacy.  So he pulled a gun on me.  He searched me.  I

20  emptied my pockets.  He patted me down.  I mean I'm scared.  I

21  don't know what's really going on.  He searched my vehicle,

22  me.

23       So when he put his gun back, I took off running.  I

24  was scared.  And when I ran, I got to the next street behind

25  my house.  I felt comfortable because I saw people.  So I put

1   my hands up and -- and I put my hands up.  I gave myself up,

2   and he said, "Freeze," and told me -- He took me; walked me

3   back all the way around this guy's house and found some --

4   some marijuana.  And I told him, "You did not get that off of

5   me.  My pockets was clean whenever -- when you searched me."

6   All I had in my pocket was my medicine prescription for my

7   gout.

8           So he took me, put me in the truck and came back and

9   told me, "Well, listen, we can do this the easy way or the

10  hard way.  I promise you you make me do this the hard way,

11  then we're going to take you downtown and beat the hell out of

12  you."  So I said, "Well, I ain't got no drugs at my house.

13  You can search my house."

14          So he searched my house and found the shotgun.  And I

15  explained to him, I said, "Sir, the reason why I have the

16  shotgun is because my home been broken into, vandalized

17  twice."  And I called everybody; the Sheriff's Office, the

18  Highway State Patrol, the U.S. State -- U.S. Department of

19  Justice, U.S. Marshals even, and nobody seemed to do anything.

20  So after that second time, I was -- I was frustrated out of

21  fear, living in fear.  So I bought a shotgun off of the

22  street.  And I even told him who I got the shotgun from.  My

23  friend said the shotgun was not stolen.

24          So now I found myself here, but that's, you know --

25  And then my house got broken into again when I was in Dunklin

1  County for the third time, and nothing still has been done.

2  My paid attorney -- My paid attorney, she had to file a police

3  report and charges because they failed to do anything.

4       So they failed to serve and protect me as they're

5  sworn in to do.  So I don't -- You know what I'm saying?

6       What do you do when the law don't want to protect

7  you?

8       THE COURT:  All right.  Mr. Hahn?

9       MR. HAHN:  Your Honor, the Government is consistent

10  with Mr. Skrien's recommendation as well.  This case to me,

11  the mandatory minimum amount of 180 months is what's

12  appropriate.

13       THE COURT:  The Court, after hearing from both

14  counsel as well as Defendant and reviewing the Presentence

15  Report, is now ready to proceed with sentencing.

16       The instant offense involved the Defendant, a

17  convicted felon, unlawfully possessing a stolen 12-gauge pump

18  action shotgun.  The Defendant's criminal history includes

19  prior felony convictions for unlawful use of a weapon,

20  shooting at a person or motor vehicle, trafficking in drugs

21  first degree, and sale of a controlled substance.

22       The Defendant reported an upbringing in violent and

23  poor neighborhoods.  At the age of four or five, the Defendant

24  observed his mother being frequently abused by her boyfriend.

25  Additionally, the Defendant had some problems at age 11 where

1 | he reported having a history of depression, bipolar disorder,

2 | anxiety disorder and suicidal thoughts.

3 | As such, in light of the advisory guidelines range

4 | and the provisions of 18 USC Section 3553(a), a sentence of

5 | 180 months' imprisonment, which represents the statutory

6 | minimum sentence, I believe, would be sufficient but not

7 | greater than necessary to comply with the purposes set forth

8 | in 18 USC Section 3553(a).

9 | It is further recommended that this sentence run

10 | concurrent to any sentence imposed under Docket No.

11 | 17SO-CR00105, pursuant to USSG, Section 5G1.3, as the charges

12 | are relevant conduct to the instant offense.

13 | Therefore, pursuant to the Sentencing Reform Act of

14 | 1984 and the provisions of 18 USC Section 3553(a), it is the

15 | judgment of the Court that the Defendant, Lawrence J.

16 | Strickland, is hereby committed to the custody of the Bureau

17 | of Prisons to be imprisoned for a term of 180 months.

18 | This sentence shall run concurrent with any sentence

19 | imposed in Circuit Court, Scott County, Missouri, under Docket

20 | No. 17SO0 -- SO-CR00105.

21 | While in the custody of the Bureau of Prisons, it is

22 | recommended that the Defendant be evaluated for participation

23 | in the Residential Drug Abuse Program and mental health

24 | treatment.

25 | It is also recommended the Defendant be evaluated for

participation in an occupational/educational program specifically in home construction.  Such recommendations are made to the extent they are consistent with the Bureau of Prisons' policies.

Upon release from imprisonment, the Defendant shall be placed on supervised release for a term of three years.

Within 72 hours of release from the custody of the Bureau of Prisons, the Defendant shall report in person to the Probation Office in the district to which the Defendant is released.

Conditions of Supervision:

You must comply with the following conditions of supervision that have been adopted by this Court.  You must also comply with the Special Conditions.

If it is determined there are costs associated with any services provided, you shall pay those costs based on a co-payment fee established by the Probation Office.

You must submit to substance abuse testing to determine if you've used a prohibited substance.  You must not attempt to obstruct or tamper with the testing methods.

You must participate in a Substance Abuse Treatment Program and follow the rules and regulations of that program. The Probation Officer will supervise your participation in the program.

You must participate in a Mental Health Treatment

1    Program and follow the rules and regulations of that program.

2    The Probation Officer, in consultation with the treatment

3    provider, will supervise your participation in the program.

4         You must submit your person, property, house,

5    residence, vehicles, papers, computers, other electronic

6    communications or data storage devices or media or office to a

7    search conducted by a United States Probation Officer.  You

8    must warn any other occupants that the premises may be subject

9    to searches pursuant to this condition.  The Probation Officer

10   may conduct a search under this condition only when reasonable

11   suspicion exists that you have violated a condition of

12   supervision and that the areas to be searched contain evidence

13   of this violation.

14        The Court finds that the Defendant does not have the

15   ability to pay a fine.

16        It is further ordered that the Defendant shall pay to

17   the United States an assessment of $100 which shall be due

18   immediately.

19        Mr. Strickland, do you have any questions about the

20   conditions of supervision?

21        THE DEFENDANT:  I don't understand, Your Honor.  I

22   don't ---

23        THE COURT:  Well, when you get out, you do the best

24   you can to work with the Probation Officer to follow those

25   conditions because if you don't, you'll be right back here.

1          I must now advise you that it is your right to file a

2     Notice of Appeal from this sentence within 14 days from today.

3     Failure to file that notice within that time period shall be

4     deemed a waiver of your right to appeal.  You need to speak

5     with Mr. Skrien about that before you leave here this morning.

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Other than the objections which have been

8     previously made, stated for the record and ruled, do either

9     party have any objections to the Court's findings of fact,

10    conclusions of law or to the manner in which this sentence was

11    pronounced?

12         MR. HAHN:  No, Your Honor.

13         MR. SKRIEN:  No, Your Honor.

14         THE COURT:  The sentence will be imposed as stated.

15         Is there anything further from the Government,

16    Mr. Hahn?

17         MR. HAHN:  No, Your Honor.

18         MR. SKRIEN:  Could I have just a moment?

19         (Pause)

20         MR. SKRIEN:  Your Honor, if the Court would make the

21    recommendation that Mr. Strickland be incarcerated in either

22    Marion, Illinois or Memphis, Tennessee, if that's consistent

23    with the Bureau of Prisons' policies.

24         THE COURT:  If it's consistent with the Bureau of

25    Prisons' policies, the Court recommends that Mr. Strickland be

1    incarcerated in the Memphis or -- Where was the other one?

2           MR. SKRIEN:  Marion.

3           THE COURT:  Marion, Illinois --

4           MR. SKRIEN:  Yes.

5           THE COURT:  -- facility.

6           Is there anything further?

7           MR. SKRIEN:  No, Your Honor.  Thank you.

8           THE COURT:  That will conclude this hearing.  Court

9    will be in recess for about ten minutes.

10          (Hearing adjourned at 11:05 AM.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATE OF OFFICIAL REPORTER</u>

       I, Deborah A. Kriegshauser, Federal Official Realtime Court Reporter, in and for the United States District Court for the Eastern District of Missouri, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

       Dated this 8th day of March, 2018.


       /s/ Deborah A. Kriegshauser
       _____
       DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
       FEDERAL OFFICIAL COURT REPORTER